JS 44 (Rev. 02/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

UNITED STATES OF AMERICA ex rel. ANDREA DIAZ, et al.,

**DEFENDANTS**

BEACON POINT RECOVERY CENTER, LLC D/B/A AMBROSIA TREATMENT CENTER, and JERRY HAFFEY SR.,

**(b)** County of Residence of First Listed Plaintiff    Philadelphia
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Florida
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

David F. McComb, Esq., Zarwin, Baum, DeVito, Kaplan, Schaer & Toddy, P.C., 1818 Market St., 13th Fl., Phila, PA 19103 (215) 569-2800

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1   U.S. Government Plaintiff

☐ 2   U.S. Government Defendant

☐ 3   Federal Question
*(U.S. Government Not a Party)*

☐ 4   Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☒ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | **PERSONAL PROPERTY** | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| | | | | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1   Original Proceeding

☐ 2   Removed from State Court

☐ 3   Remanded from Appellate Court

☐ 4   Reinstated or Reopened

☐ 5   Transferred from Another District *(specify)*

☐ 6   Multidistrict Litigation - Transfer

☐ 8   Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
False Claims Act

Brief description of cause:
Submission of False claims to Gov't

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____ DOCKET NUMBER _____

DATE
11/18/2019

SIGNATURE OF ATTORNEY OF RECORD

## FOR OFFICE USE ONLY

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>ex rel. ANDREA DIAZ, et al., | : | CIVIL ACTION |
| v.<br>BEACON POINT RECOVERY CENTER, LLC<br>d/b/a AMBROSIA TREATMENT CENTER<br>and JERRY HAFFEY, SR. | :<br>:<br>:<br>: | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.　　　( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.　　　( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.　( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.　　　( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)　　　( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.　　　(✓)

| | | |
|---|---|---|
| November 18, 2019 | David F. McComb, Esquire | Plaintiffs |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-569-2800 | 267-765-9628 | dfmccomb@zarwin.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ See Attachment _____

Address of Defendant: _____ 661 University Boulevard, Suite 100, Jupiter, FL 33458 _____

Place of Accident, Incident or Transaction: _____ Philadelphia, PA _____

---

**RELATED CASE, IF ANY:**

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
   Yes ☐  No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
   Yes ☐  No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?
   Yes ☐  No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
   Yes ☐  No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 11/18/17 _____ *Attorney-at-Law / Pro Se Plaintiff* _____ 35754 _____ *Attorney I.D. # (if applicable)*

---

**CIVIL:** (Place a √ in one category only)

**A.  Federal Question Cases:**

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☐ 7. Civil Rights
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☐ 11. All other Federal Question Cases
   *(Please specify):* False Claims / Qui Tam

**B.  Diversity Jurisdiction Cases:**

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify):* _____
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☐ 9. All other Diversity Cases
   *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, David F. McConn, counsel of record *or pro se plaintiff*, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: 11/18/2019 _____ *Attorney-at-Law / Pro Se Plaintiff* _____ 35754 _____ *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

**Attachment to Designation Form**
**Address of Plaintiff's**

Andrea Diaz- 5807 Riverfront Drive, Palmyra, NJ 08065

Nicole Hitchings - 4428 Frankford Ave, Apt 6, Philadelphia, PA 19124

Markus Rodriguez -3359 Rand Street, Philadelphia, PA 19134

Joanne Hernandez - 4258 N. Marshall Street, Philadelphia, PA 19140

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

United States of America ex rel.                        :

                                                        :
           V.                        :        Civil Action
                                                        :        No: _____
BEACON POINT RECOVERY                                   :
CENTER, LLC                                             :

## DISCLOSURE STATEMENT FORM

Please check one box:

☐         The nongovernmental corporate party, _____
         , in the above listed civil action does not have any parent corporation and
         publicly held corporation that owns 10% or more of its stock.

☐         The nongovernmental corporate party, _____
         , in the above listed civil action has the following parent corporation(s) and
         publicly held corporation(s) that owns 10% or more of its stock:

_____
_____
_____
_____

11/18/2019
_____        _____
        Date                                     Signature

        Counsel for:   Plaintiffs  _____


**Federal Rule of Civil Procedure 7.1 Disclosure Statement**
    (a)   WHO MUST FILE; CONTENTS.  A nongovernmental corporate party must file
        two copies of a disclosure statement that:
        (1)   identifies any parent corporation and any publicly held corporation
            owning10% or more of its stock;  or

        (2)   states that there is no such corporation.

    (b) TIME TO FILE; SUPPLEMENTAL FILING.  A party must:
        (1)   file the disclosure statement with its first appearance, pleading,
            petition, motion, response, or other request addressed to the court;
            and
        (2)   promptly file a supplemental statement if any required information
            changes.

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

United States of America ex rel.

             :

V.          ✚    :          Civil Action

           :         No: _____

BEACON POINT RECOVERY    :
CENTER, LLC           :
         ✚

**DISCLOSURE STATEMENT FORM**

Please check one box:

☐     The nongovernmental corporate party, _____
, in the above listed civil action does not have any parent corporation and publicly held corporation that owns 10% or more of its stock.

☐     The nongovernmental corporate party, _____
, in the above listed civil action has the following parent corporation(s) and publicly held corporation(s) that owns 10% or more of its stock:

_____
_____
_____
_____

11/18/2019                        _____
Date                              Signature

Counsel for:    Plaintiffs _____

**Federal Rule of Civil Procedure 7.1 Disclosure Statement**
(a)    WHO MUST FILE; CONTENTS. A nongovernmental corporate party must file two copies of a disclosure statement that:
     (1)    identifies any parent corporation and any publicly held corporation owning10% or more of its stock; or

     (2)    states that there is no such corporation.

(b) TIME TO FILE; SUPPLEMENTAL FILING. A party must:
     (1)    file the disclosure statement with its first appearance, pleading, petition, motion, response, or other request addressed to the court; and
     (2)    promptly file a supplemental statement if any required information changes.

# UNITED STATES DISTRICT COURT

for the

Eastern District of Pennsylvania

| | |
|---|---|
| UNITED STATES OF AMERICA<br>ex rel. ANDREA DIAZ, et al., <br><br>_____<br>*Plaintiff(s)*<br>v.<br><br>BEACON POINT RECOVERY CENTER,<br>LLC D/B/A AMBROSIA TREATMENT<br>CENTER, and JERRY HAFFEY SR.,<br><br>_____<br>*Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No.

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Beacon Point Recovery Center, LLC
d/b/a Ambrosia Treatment Center
661 University Boulevard, Suite 100
Jupiter, FL 33458

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:    David F. McComb, Esquire
Zarwin, Baum, DeVito, Kaplan, Schaer & Toddy, P.C.
1818 Market Street, 13th Floor
Philadelphia, PA 9103
215-569-2800

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____                    _____
                                                                      *Signature of Clerk or Deputy Clerk*

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $ ___0.00___ .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

# UNITED STATES DISTRICT COURT

for the

Eastern District of Pennsylvania

| | |
|---|---|
| UNITED STATES OF AMERICA<br>ex rel. ANDREA DIAZ, et al.,<br><br>_____<br>*Plaintiff(s)*<br>v.<br>BEACON POINT RECOVERY CENTER,<br>LLC D/B/A AMBROSIA TREATMENT<br>CENTER, and JERRY HAFFEY SR.,<br>_____<br>*Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)   Civil Action No.<br>)<br>)<br>)<br>)<br>)<br>) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*    Jerry Haffey Sr.
                                       d/b/a Ambrosia Treatment Center
                                       661 University Boulevard, Suite 100
                                       Jupiter, FL 33458

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:    David F. McComb, Esquire
                                       Zarwin, Baum, DeVito, Kaplan, Schaer & Toddy, P.C.
                                       1818 Market Street, 13th Floor
                                       Philadelphia, PA 9103
                                       215-569-2800

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____                       _____
                                                *Signature of Clerk or Deputy Clerk*

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*


_____
*Server's address*

Additional information regarding attempted service, etc:

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>ex rel. ANDREA DIAZ, et al., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | CIV. NO. 19-xxxx |
| | : | |
| BEACON POINT RECOVERY CENTER,<br>LLC D/B/A AMBROSIA TREATMENT<br>CENTER, and JERRY HAFFEY SR., | : | FILED UNDER SEAL |
| | : | JURY DEMAND |
| Defendants. | | |

COMPLAINT OF QUI TAM PLAINTIFFS

I. INTRODUCTION

1.      This is an action to recover damages and civil penalties on behalf of the United

States of America arising from false and/or fraudulent statements, records and claims made and

caused to be made on behalf of Beacon Point Recovery Center, LLC d/b/a Ambrosia Treatment

Center and/or their subsidiaries, agents, and employees in violation of the Federal False Claims

Act, 31 U.S.C. §§ 3729, *et seq.*

2.      This case involves Defendants' pursuit of Medicaid payments from the Federal

Government through creative and outright fraudulent record keeping and claims submissions

originating in Defendants' facility located in Philadelphia, Pennsylvania. Defendants have

knowingly claimed and received payments to which they were not entitled.

3.      As a direct and intended result of Defendants' improper practices, the United States

of America has made payments to Defendants that were fraudulently obtained.

1

## II. BACKGROUND OF THE FALSE CLAIMS ACT

4.     The Federal False Claims Act was originally enacted during the Civil War. Congress substantially amended the Act in 1986 and again in 2009 and 2016 to enhance the ability of the United States Government ("the Government") to recover losses sustained as the result of fraud against the United States after finding that fraud in federal programs was pervasive and that the Act, which Congress characterized as the primary tool for combatting government fraud, was in need of modernization. Congress intended that the amendments create incentives for individuals with knowledge of fraud against the Government to disclose the information without fear of reprisals or Government inaction, and to encourage the private bar to commit legal resources to prosecuting fraud on the Government's behalf.

5.     The Act provides that any person who knowingly submits, or causes the submission of, a false or fraudulent claim to the Government for payment or approval, or who retains a payment after discovery or knowledge that it is improper, is liable for a civil penalty of up to $11,000 for each such claim, plus three times the amount of the damages sustained by the Government. Liability attaches when a defendant "knowingly" seeks payment, or causes others to seek payment, from the Government that is unwarranted. Requisite "knowledge" can include not only actual knowledge as to the impropriety or ineligibility for federal payment of the claim or information but also acts taken in deliberate ignorance or in reckless disregard of the truth or falsity of such claim or information.

6.     The Act allows any person having knowledge about a false or fraudulent claim against the Government to share in any recovery and to recover reasonable costs, expenses and attorney fees from the defendant if the action is successful. The Act requires that the complaint be

filed under seal for a minimum of sixty (60) days without service on the defendant to allow the Government time to conduct its own investigation and to determine whether to join the suit.

## III. PARTIES

7.    Plaintiff/Relator Andrea Diaz (hereinafter "Diaz") is a resident of New Jersey, residing at 5807 Riverfront Drive, Palmyra, NJ 08065. From April 8, 2019 until October 8, 2019, Diaz worked at Ambrosia's Philadelphia facility as Clinical Director and was tasked with the overall clinical operations of inpatient detox and residential program.

8.    Plaintiff/Relator Nicole Hitchings (hereinafter "Hitchings") is a resident of Pennsylvania, residing at 4428 Frankford Ave, Apt 6, Philadelphia, PA 19124. From August 27, 2019 through October 8, 2019, Hitchings worked at Ambrosia's Philadelphia facility as a drug and alcohol Therapist.

9.    Plaintiff/Relator Markus Rodriguez (hereinafter "Rodriguez") is a resident of Pennsylvania, residing at 3359 Rand Street, Philadelphia, PA 19134. From July 31, 2019 until October 18, 2019 Rodriguez worked at Ambrosia's Philadelphia facility as a Case Manager performing patient care activities as directed by the attending physician, Medical Director and Clinical Supervisor.

10.    Plaintiff/Relator Joanne Hernandez (hereinafter "Hernandez") is a resident of Pennsylvania, residing at 4258 N. Marshall Street, Philadelphia, PA 19140. From August 5, 2019 through October 8, 2019, Hernandez worked at Ambrosia's Philadelphia facility as a drug and alcohol Lead Therapist.

11.    Defendant, Beacon Point Recovery Center, LLC d/b/a Ambrosia Treatment Center ("Ambrosia") is an operator of drug and alcohol treatment and rehabilitation facilities and related

services with facilities located in Pennsylvania, Florida and California. Its principal place of business is 661 University Boulevard, Suite 100, Jupiter, FL 33458.

12.     Defendant Jerry Haffey Sr. ("Haffey"), is Ambrosia's Chief Executive Officer, owner and and founder. On information and belief, Haffey is a resident of Florida.

13.     At all times herein, Relators were employed by Beacon Point Recovery Center, LLC d/b/a Ambrosia Treatment Center and/or their subsidiaries.

## IV. JURISDICTION AND VENUE

14.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1367 and 31 U.S.C. § 3732, the last of which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. §§ 3729 and 3730. Under 31 U.S.C. § 3730(e), there has been no statutorily relevant public disclosure of the "allegations or transactions" in this Complaint. Relators, moreover, qualify under that section of the federal and False Claims Act as "original sources" of the allegations in this Complaint even had such a disclosure taken place.

15.     This Court has personal jurisdiction and venue over Defendants pursuant to 28 U.S.C. §§ 1391(b) and 31 U.S.C. § 3732(a) because that section authorizes nationwide service of process and because Defendants have sufficient minimum contacts with the Eastern District of Pennsylvania, avail themselves of this jurisdiction and conduct business in the Eastern District of Pennsylvania.

16.     Venue is proper in this District pursuant to 31 U.S.C. § 3732(a) because Defendants can be found and transact business in this District. At all times relevant to this Complaint, Defendants conducted regular, substantial business within the Eastern District of Pennsylvania. In addition, the statutory violations and fraudulent conduct alleged herein took place in this District.

## V. MEDICAID ACT BACKGROUND

17.    Title XIX of the Social Security Act ("the Medicaid Act") authorizes federal grants to the States for Medicaid programs to provide medical assistance to persons with limited income and resources. Medicaid programs are administered by states in accordance with federal regulations. State Medicaid agencies conduct their programs according to a plan approved by the Center for Medicare/Medicaid Services ("CMS"). To carry out the mandates of the Medicaid program, the State agency pays providers for medical care and services provided to eligible Medicaid recipients. Providers that wish to participate in the Medicaid program must agree to comply with certain requirements specified in a provider agreement.

18.    Medicaid is a jointly funded, federal–state health insurance program for low-income and needy people. Of the roughly $350 billion spent on Medicaid nationally, about 60 percent is paid by the federal government. A state government's share can vary and in Pennsylvania, it is 55 percent. Medicaid covers children, pregnant women, the aged, blind, and/or disabled and other adults who are eligible to receive federally assisted income maintenance payments.

19.    All states must meet federal minimum requirements, but they have options for setting eligibility standards beyond the minimum federal guidelines. The Affordable Care Act (ACA) extended Medicaid eligibility to non-elderly adults with incomes at or below 138 percent of the federal poverty limit (FPL) which, during 2016, was $33,534 for a family of four. States are provided an enhanced federal matching payment to support the expansion. Pennsylvania expanded Medicaid during 2015.

20.    Philadelphia has a comprehensive behavioral health system that was created through a partnership between the City of Philadelphia and the Commonwealth of Pennsylvania.

In 1997, Philadelphia launched its own behavioral health managed care organization, Community Behavioral Health ("CBH").

21.     The City of Philadelphia has approval from the Commonwealth of Pennsylvania, Department of Human Resources to manage a Mandatory Medical Assistance Behavioral Health Managed Care Program for eligible persons residing in the Philadelphia County called the HealthChoices Behavioral Health Program. HealthChoices is the name of Pennsylvania's managed care programs for Medical Assistance recipients.

22.     CBH is a non-profit organized under the laws of the Commonwealth for the primary purpose of arranging for the delivery of, and paying for, mental health and substance services for eligible medical assistance recipients to be provided by independent healthcare providers. CBH is contracted by the City of Philadelphia to manage the delivery of behavioral health services for Medicaid recipients of Philadelphia County. Services are delivered in accordance with Pennsylvania's HealthChoices Program, administrated through the Office of Mental Health and Substance Abuse Services (OMHSAS).

23.     CBH authorizes payment for an array of services, including mental health and substance use outpatient programs, residential rehabilitation programs, inpatient psychiatric and addictions treatment programs, and family and community-based therapies.

24.     CBH requires that a MA-307 form must accompany all claims for payment. In this form, a provider is attesting to the accuracy of the information and that the individual could be prosecuted for false claims, statement or documents, or concealment of material fact.

25.     Federal law requires state Medicaid programs to cover basic services, but states also can choose to cover up to 30 optional benefits. Pennsylvania covers 24 optional benefits, including prescription drugs, vision, dental, physical therapy, home health, and hospice care. The

state's Medicaid expansion coverage includes the ACA's ten essential health benefits, such as preventive services, and expanded mental health and substance use treatment services.

26.     Pennsylvania's HealthChoices Program pays for most addiction treatment services for eligible individuals. For many services, individuals may be required to undergo a clinical assessment to show medical need for treatment. Pennsylvania's HealthChoices Program typically pays for the following services: cognitive behavioral therapy, dialectical behavioral therapy, counseling, medically supervised detox, medication management, medication-assisted treatment (MAT), outpatient programs and residential programs.

27.     Behavioral health and other medical services and payments under Pennsylvania's HealthChoices Program are governed by statutes, rules and regulations, and Provider Agreements between the Managed Care Organizations ("MCOs") and/or Health Maintenance Organizations ("HMOs") authorized to administer Medicaid and the Providers with whom the MCOs/HMOs contract to provide services.

28.     All providers of Medicaid medical services are required to meet and follow certain guidelines and requirements. These requirements include, but are not limited to, the following:

a. valid accreditation;

b. appropriate record keeping that reflects all aspects of patient care at the location where services are provided;

c. making financial and clinical records available for review by government and MCO utilization review auditors;

d. provision of care pursuant to nationally recognized standards of care by individuals with licensures commensurate with the provision of such care;

e. conformity with Provider Agreements regarding level of care, authorization for services, and provision of services.

29.     Under Medicaid, in the area of behavioral health, Providers must receive preauthorization and concurrent authorization for almost all services rendered. Absence of authorization for services can, and often does, result in nonpayment to providers. Preauthorization is typically obtained by reporting clinical information sufficient to establish and certify the medical necessity of the service for which authorization is sought on a form, which is then provided to the MCO/HMO. The form must be executed certifying the veracity of its contents. The MCO/HMO then reviews the information as provided and, if medical necessity is established, preauthorizes treatment by certifying medical necessity or, if medical necessity is not established, refuses authorization outright or requests additional documentation.

30.     Obviously, Providers are only entitled to reimbursement for the actual care provided. For instance, if a patient is authorized for care up to detoxification, but the Provider only provides rehabilitative services, the Provider is authorized to accept payment only for the level of care actually provided.

31.     In the context of behavioral health, concurrent authorization review is common. Concurrent authorization involves a review by the MCO or HMO of the then existing clinical information, communicated by the Provider, to determine whether ongoing treatment is medically necessary. For instance, the MCO might review the information and determine that a patient who is receiving detoxification services no longer needs that level of care, and withdraw authorization for that level of care.

32.     Providers are further required to report when an eligible recipient is no longer receiving authorized care to ensure that the Provider does not receive payment for services it does not provide. For instance, if a patient dies during treatment, or leaves against medical advice ("AMA"), before the certified period of authorization has elapsed, the Provider must report that

information to the MCO and can claim payment only for the period of time for which the Pennsylvania Medicaid recipient actually received care. Likewise, Providers must report accurately the level and amount of services provided and cannot misstate or overstate the services provided.

## VI. SPECIFIC MISCONDUCT BY DEFENDANTS

### A.  Failure to Provide Services

33.     Defendants billed and received payment from Pennsylvania Medicaid for services that they did not provide.

34.     Haffey and Ambrosia opened their Philadelphia location in mid-2019. From April 2019 through August 2019, Diaz, the Clinical Director, was tasked to assist with "startup" duties such as writing the Request for Proposal to Medicaid ("RFP") contract, recruiting, training and onboarding clinical, administrative and supportive staff. As Ambrosia's Human Resources function is housed in the Florida location, many of those tasks were delegated.

35.     Ambrosia's treatment program opened on August 5, 2019 as an "out of network provider" with Medicaid as the in-network contract was being negotiated.

36.     As a startup, the program was not sufficiently staffed, nor were employees adequately trained how to complete necessary tasks. For example, nurses were hired in order to complete intake assessments, physicals, medication assessment, etc. However, nursing staff is required to be supervised by a Nursing Director with at least a Master level degree in nursing. Despite that, however, Diaz was tasked to supervise the nursing staff including clinical and administrative supervision, even though Diaz does not hold any nursing degree.

37.     Due to the shortage in staff, including nurses, clinicians, and intake staff, Diaz was directed to complete clinical assessments, facilitate clinical groups, complete all necessary

documentation, etc. However, as clinical director, she was not supposed to fulfill a Therapist role and Pennsylvania Department of Drug and Alcohol regulations state that a full-time clinical supervisor is required separate and apart from a clinical director.

38. Diaz was also directed by Defendants' management to ask clinical therapists to complete clinical documentation fraudulently, such as completing treatment notes after a client had been discharged from program, or completing treatment plans after the discharge of a client, and completing individual treatment notes for patients who were not, in fact, seen individually.

39. Diaz initially closed charts as they "were," however, she was then asked by Defendants' management to re-open the charts and to direct the therapists to complete documentation in order to bring the chart "up to compliance." In addition, she was asked to do the same for her own charts.

40. Diaz was also asked to forward documentation to Defendants' medical director to approve after the required date, such as treatment plans which are required, and were signed off by the medical director weeks or months later. The delay and/or "backdating" of clinical documentation was "directed" in order to make sure Medicaid would reimburse services without any variances including financial payout to Medicaid.

41. In short, Diaz was directed by Chief Executive Officer and Founder, Jerry Haffey Sr., ("Haffey"), and other of Defendants' managers, including Joseph Curran ("Curran"), the Executive Director of Philadelphia, and Ambrosia's Clinical Director of Services, Dr. Sal Raichbach ("Raichbach"), to carry out unethical, fraudulent and duties beyond her credentials, and which resulted in her constructive discharge. Diaz felt compelled to resign her position on October 8, 2019 due to the acute stress, physical and emotional exhaustion she felt as a result of being

required to commit unethical and fraudulent practices. Even as she was leaving, Defendants requested that Diaz submit further fraudulent treatment paperwork on her last day.

42.     Relators Hitchings and Hernandez were responsible for patient caseloads and providing substance abuse and mental health counseling in the form of group, individual, and family therapy.

43.     Group therapies include but are not limited to educational groups, didactic, and experiential. A Therapist is required to conduct pertinent assessments such as bio-psychosocial and develop a multifaceted treatment plans with measurable and short-term attainable goals. The Therapist is required to fully document the treatment process, including the preparation of clinical progress notes, treatment planning, and all other pertinent clinical documentations required to meet and exceed state and federal standards.

44.     On or about September 12, 2019, Raichbach held a clinical meeting with Hitchings, Hernandez, other Therapists, Case Managers, and the Clinical Director, Relator Diaz. Raichbach told the clinical team they should document treatment of individuals for an hour even if client was seen for only 5-10 minutes, they should open past patient's charts to add individual's and group notes even if those patients were not seen.

45.     Raichbach stated to the clinical team that "it didn't matter who wrote the paperwork," to just have the client's Therapist sign off on the document, and to create several different treatment plans per client for no reason. The clinical team also was directed to run afternoon groups with as many as 25 people, by themselves if necessary, with no help.

46.     Hitchings and Hernandez were also asked by Haffey and Curran to put individual session and group notes into charts -- even if they did not see the patients. In addition, Raichbach,

Haffey and Curran told Hitchings and Hernandez to make up notes for individuals that were not their patients.

47. Defendant asked Therapists, including Hitchings and Hernandez, to prepare treatment paperwork even if the client was no longer in the program. For example, Defendants allowed their staff to open up closed charts to put missing paperwork into the system. The staff was also told to backdate documents and then have the appropriate Therapist sign them. The following patients had their charts back dated: RH, JM, PP, VS, JM, DH, JM, PM, RO, CG, KM, JG, AJ, AL, DW, GG, JF, JI, JG, LE, JM, DS, NR, TB, HB, EL, CC, LW, ML, WL, GF, JH, MT, MS, WK, CP, JZ, NB, RM, RC and DY. On information and belief, Defendants directed that other patient charts be backdated and otherwise recorded in a false and fraudulent manner.

48. Hitchings and Hernandez were specifically told that if they spoke to a client for 10 minutes to put an individual session into his/her chart and, rather than writing the actual treatment times, to make it an hour-long session. In addition, there were certain patients that were on Hitchings' case load that she never met or saw, but for whom she was told to prepare and submit treatment paperwork. For example, Hitchings was told to increase the time for at least the following patients: JH, JZ, CP, RM and MM.

49. Because of a work overload and scheduling conflicts, Hitchings and Hernandez frequently were unable to see some patients or complete paperwork and they expressed their concern to Haffey and Curran on several occasions. Haffey and Curran responded by telling them to write in treatment notes for the individuals -- even if they did not see the clients. Hitchings and Hernandez told Raichbach, Haffey and Curran that they felt uncomfortable doing this, who responded that if they wanted to keep their job, they had to do it. For example, Hitchings never met patients NB and RC, but was told to complete their treatment paperwork.

50.    On one occasion, Hitchings sent an email to Defendants' management stating that certain patients told her that their therapist had not seen them since they arrived at the facility. Hitchings looked at their charts, and saw that they were empty. She then raised the issue in a clinical meeting with Defendants and, a few hours later, another Therapist had put in individual sessions for both patients in their chart for days that he did not, in fact, see or treat them.

51.    Relators Hitchings and Hernandez were fired from their positions in October 2019 because they complained to Defendants about the billing and treatment misconduct and attempted to stop the fraudulent practices. The reasons given for their terminations were pretextual and demonstrably false.

52.    When Relator Rodriguez was first hired, Raichbach and others told him that he needed to help with biopsychosocial assessments, which are intended to examine the interconnection between biology, psychology and socio-environmental factors. Rodriguez was told by Defendants to do the assessments because, at that time, they had only had one Therapist, who could not handle all the work.

53.    However, only licensed Therapists can do assessments. Despite that requirement, Raichbach and Binny Montenegro, Ambrosia's Chief Operating Officer, told Rodriguez and other Case Managers to work on the biopsychosocial assessments because of the shortage of Therapists.

54.    On or about October 16, 2019, Raichbach told Case Managers to do initial treatments plan with the patients, because Ambrosia continued to be short-staffed.

55.    On or about October 17, 2019, Raichbach told Rodriguez to complete Utilization Reviews ("UR") with assistance from a compliance consultant. Rodriguez was not qualified or licensed to do UR's. The URs were completed on October 18, 2019 with very little information. An UR needs to provide reasons why a client needs more time at a rehab center. In many instances,

no initial treatment was provided or individual sessions done, and hardly any of the clients' charts were completed. Despite the absence of information necessary to do a UR and despite Rodriguez lacking the qualifications and experience to do a UR, he was told by Dennis Deal, Ambrosia's Compliance Officer, and Curran to write whatever was necessary to get the client more time at Defendants' Philadelphia facility.

56.    In short, Rodriguez was pressured into doing things he did not want to do and was not authorized to perform: providing biopsychosocial assessments, initial treatment plans, group session notes and UR's. The governing regulations required those services to be done by persons with greater qualifications and/or experience than Rodriguez possessed.

57.    After Rodriguez expressed concerns about these issues to Defendants, he was terminated for pretextual and demonstrably false reasons.

### B.    Illicit Authorizations

58.    Defendants routinely changed their internal records and misrepresented the care and protection they provided to their patients. Specifically, Defendants changed the information in patient charts to reflect appropriate levels of care they had not provided. More alarmingly, Defendants went so far as to document treatment for patients who were never seen.

59.    Further, absent supervision from qualified and credentialed personnel, Defendants were not authorized to provide much of the treatment they did provide and for which they requested reimbursement. Defendants certified that they were providing appropriate care under appropriate medical supervision, but no such supervision existed. For periods of time, Defendants had no medical director or even a registered nurse to serve as director of nursing. General staffing levels were inadequate to provide the levels of care Defendants certified that they were providing, forcing clinicians to carry patient loads that far exceeded the standard of care.

60.     Defendants' own records, including their Electronic Health Records ("EHR"s) clearly demonstrate the falsification and backdating of treatment records and that they were billing for more treatment than they were actually providing or were authorized to provide.

61.     Defendants and their senior management, including Raichbach and Curran, actively encouraged the modification of charts, requests for authorization, and internal documentation to maximize reimbursement. These individuals, for the benefit of Defendant, instructed staff to alter and falsify patient charts and records.

62.     Additionally, or alternatively, Defendants knew that their reimbursements were obtained as the result of false claims but they have not disgorged the funds. Relators specifically provided information to Defendants warranting a corporate audit of bookkeeping records to make the Defendants aware of the false claims, but no action was taken. Rather, Relators were chastised and then fired to keep the fraudulent bookkeeping quiet.

## COUNT I: FALSE CLAIMS ACT - FALSE CLAIMS
### (31 U.S.C. §§ 3729, *et seq.*)

63.     Relators reallege and incorporate by reference the allegations of preceding paragraphs.

64.     This is a claim for treble damages and penalties under the Federal False Claims Act.

65.     Through the actions and inactions described above, Defendants have knowingly caused to be presented to the United States Government for approval and payment false and fraudulent claims by Pennsylvania Medicaid program.

66.     As a result of these false claims, the United States of America made payments that it was not obligated to make, suffered and continues to suffer damages in an amount that cannot yet be finally determined but which amounts to a significant amount of dollars.

## COUNT II: FALSE CLAIMS ACT - FALSE RECORDS
### (31 U.S.C. §§ 3729, *et seq.*)

67.     Relators reallege and incorporate by reference the allegations of preceding paragraphs.

68.     This is a claim for treble damages and penalties under the Federal False Claims Act.

69.     Through the actions and inactions described above, Defendants have knowingly made, used and caused to be made and used false records and statements to get paid false or fraudulent claims by Pennsylvania Medicaid for federal matching funds.

70.     As a result of these false records, the United States of America made payments that it was not obligated to make, suffered and continues to suffer damages in an amount that cannot yet be finally determined but which amounts to millions of dollars.

## COUNT III - WHISTLEBLOWER RETALIATION
### (31 U.S.C. §3730(h))

71.     Relators reallege and incorporate by reference the allegations of preceding paragraphs.

72.     Defendants initiated adverse employment actions against Relators because they engaged in protected activity under the False Claims Act.

73.     Defendants retaliated against Relators because they had taken steps to stop the fraudulent scheme that Defendants were engaging in to falsely and fraudulently submit claims.

## COUNT IV- PENNSLVANIA WHISTLEBLOWER LAW
### (43 P.S. 1423(a))

74.     Relators reallege and incorporate by reference the allegations of preceding paragraphs.

75. Defendant Ambrosia/Beacon is an "employer" within the meaning of the Pennsylvania Whistleblower Law, 43 P.S. 1423(a) ("WBL") as it receives money from a public body to perform work or provide services relative to the performance of work.

76. Defendant Haffey is an "employer" within the meaning of the WBL.

77. Defendants were aware, or should have been aware, that Relators were engaged in protected activity under the WBL by making reports to their employers and their supervisory staff of wrongdoing or waste, without malice or consideration of personal benefit, about which Relators had reasonable cause to believe was true.

78. In response, Defendants retaliated against Relators by terminating their employment, including causing the constrictive termination of Relator Diaz's employment.

79. The stated reasons for Relators' termination are demonstrably untrue and pretextual.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs, on behalf of the United States, demand and pray that judgment be entered in their favor as follows:

1. On the First and Second Counts under the False Claims Act, for the amount of the United States' damages, trebled as required by law, and such civil penalties as are required by law, together with all such further relief as may be just and proper;

2. On the Third Count for whistleblower retaliation, all statutory damages and relief, together with all such further relief as may be just and proper;

3. On the Fourth Count under the PWL, all statutory relief, punitive damages, costs and attorney's fees; and.

3.      Award all statutorily-mandated attorney's fees to Relators' counsel, and other relief

as may be required or authorized by law and in the interests of justice.

Respectfully submitted,

ZARWIN, BAUM, DeVITO, KAPLAN
SCHAER & TODDY, P.C.

David F. McComb
dfmccomb@zarwin.com
PA Bar Mo. 35754
Zachary A. Silverstein
zsilverstein@zarwin.com
1818 Market Street, 13th Floor
Philadelphia, PA 19103
Fax: 267-765-9665
Attorneys for Plaintiffs

Date: November 13, 2019